AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-500
info@cleftonlaw.com

Attorneys for Plaintiff
JENNIFER STAVITSKY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JENNIFER STAVITSKY,<br><br>        Plaintiff,<br><br>    v.<br><br>MURRAY HAMILTON INVESTMENTS LLC; WEINSTOCK MANAGEMENT LLC,<br><br>        Defendants. | CASE NO. 2:25-cv-4958<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1)  Violation of the Federal Fair Housing Act (42 U.S.C. § 3601 *et seq.*)<br><br>2)   Violation of the California Fair Employment and Housing Act (Gov't Code § 12926 *et seq.*)<br><br>3)  Violation of the California Disabled Persons Act (Civil Code § 54 *et seq.*)<br><br>4)  Violation of the California Unruh Act (Civil Code § 51(b))<br><br>DEMAND FOR JURY TRIAL |

Plaintiff JENNIFER STAVITSKY complains of Defendants MURRAY HAMILTON INVESTMENTS LLC; WEINSTOCK MANAGEMENT LLC, and alleges as follows:

1.    **INTRODUCTION:** Plaintiff JENNIFER STAVITSKY brings this action against MURRAY HAMILTON INVESTMENTS LLC; WEINSTOCK MANAGEMENT LLC, the owner and operator of the apartment building located at

1411-1413 Murray Drive, Los Angeles, CA 90026 and 3317-3319 Hamilton Way, Los Angels, CA 90026 ("Murray Apartments") alleging discrimination on the basis of disability in violation of the Federal Fair Housing Act, 42 U.S.C. § 3601, et seq., and related state laws.

2.    For years Defendants have denied and continue to deny Plaintiff's requests for reasonable accommodation so that she can fully enjoy her dwelling in the Murray Apartments. Plaintiff has repeatedly requested that Defendants either (1) allow her to transfer to a vacant upper floor unit so that she can escape the constant noise from upstairs neighbors which significantly impacts Plaintiff due to her disability or (2) take sufficient measures to mitigate the noise level in the bedroom of her apartment to avoid disruption of her sleep by the movement of her upstairs neighbors. Despite Plaintiff repeatedly asking for such a transfer or mitigation as a reasonable accommodation for her disability, Defendants have continuously insisted that no comparable apartments on the upper floor are available even when there have been vacant units of comparable size to Plaintiff's unit.  Further, Defendants have refused to actually provide and enforce sufficient noise mitigation for the upper units in the building to allow Plaintiff to use and enjoy her dwelling despite their repeated promises to do so. This includes failing to honor their own contractual agreement to do so. They have done this despite being aware for years that Plaintiff is suffering insomnia, hypervigilance, anxiety and chronic fatigue as a result of the noise created by upstairs neighbors in her current apartment due to her disability.

3.    Plaintiff seeks an injunction compelling Defendants to grant her reasonable accommodation requests so that she can fully use and enjoy her dwelling in a manner that is substantially equal to that of other tenants at the Murray Apartments, to force Defendants to change their policies to provide reasonable accommodations to disabled tenants; and damages for the injuries Plaintiff has suffered and will continue to suffer until Defendants changes their

discriminatory behavior.

4.    **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331 for violations of the Fair Housing Act, 42 U.S.C. sections 3601 *et seq*.  This Court has jurisdiction over the pendent state-law claims brought under California law pursuant to 28 U.S.C. section 1367.

5.    **VENUE:** Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is founded on the fact that the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

6.    **INTRADISTRICT:** This case should be assigned to the Western Division as the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

7.    **PARTIES:** Plaintiff JENNIFER STAVITSKY is and at all relevant times was a "handicapped person" as defined by 42 U.S.C. section 3602, and a "person with a disability" as defined in 29 U.S.C. section 705(9)(B), California Government Code section 12926, the Unruh Civil Rights Act, California Civil Code section 51, the Disabled Persons Act, California Civil Code section 54.1, and Civil Code section 3345. Plaintiff has been diagnosed with post-traumatic stress disorder (PTSD), depression and generalized anxiety disorder stemming from childhood trauma that occurred at night. Plaintiff's disabilities substantially limit her major life activities including maintaining a consistent sleep schedule, thinking clearly (particularly when fatigued due to insomnia), and maintaining relationships.

8.    Plaintiff's PTSD is often triggered around bedtime because her trauma stems from occurrences of being awakened during the night.  Her symptoms often manifest as insomnia which include difficulty falling asleep, difficulty staying asleep, hypervigilance and anxiety when woken during the night, and difficulty falling back asleep once awakened. Plaintiff needs a quiet environment in order to go to sleep and stay asleep. If she does not have a quiet space throughout the night,

Plaintiff cannot get sufficient sleep. As sleep is such an integral part of any person's health, Plaintiff's entire life is greatly impacted when she does not get adequate sleep, including her ability to perform self-care, think clearly, and work. She often has dizzy spells due to lack of sleep which make it unsafe for her to drive.

9.      Defendants MURRAY HAMILTON INVESTMENTS LLC and WEINSTOCK MANAGEMENT LLC are the owners and/or operators of the Murray Apartments, a 7-unit apartment building located at 1411-1413 Murray Drive, Los Angeles, CA 90026 and 3317-3319 Hamilton Way, Los Angeles, CA 90026. The Murray Apartments are a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b), a housing accommodation under FEHA, Government Code § 12927(d), and the Disabled Persons Act, Civil Code § 54.1(b)(2), and a business establishment under the Unruh Act, Civil Code § 51.

10.      Upon information and belief, the Murray Apartments consist of one studio apartment, three one-bedroom apartments, and three two-bedroom apartments (some of which have been remodeled from one-bedroom apartments to two-bedroom apartments during Plaintiff's tenancy, but that did not change square footage). There are four upper units and three lower units in the building. The Murray Apartments are rent controlled units.

11.      **FACTUAL STATEMENT:** Plaintiff began her tenancy at the Murray Apartments in 2011 when she moved into a one-bedroom, one-bathroom apartment 750 square foot apartment. Plaintiff's apartment is a lower unit, with one apartment (1413 Murray Drive) above hers. In Plaintiff's unit, the bedroom is located directly below the living room, dining area, and kitchen in the upper unit. Unit 1413 has hardwood floors throughout the unit which allows sound to carry between the upper and lower units. At the time she moved into the building, Plaintiff was traveling for work frequently and therefore was not experiencing the constant sleep disruption that she is currently experiencing.

12.    In 2018, Plaintiff began experiencing frequent sleep interruptions while in her apartment due to the noise from her upstairs neighbor which caused a significant deterioration in her PTSD symptoms and worsening of her condition. At that time, she began discussing potential reasonable accommodation with the previous property owner of Murray Apartments (Eisenberg).

13.    On February 11, 2019, Plaintiff submitted a request for reasonable accommodation to her former landlord. In that request, Plaintiff disclosed that she suffered from PTSD which was being exacerbated by the sound transmission between her unit and the unit above her (1413 Murray Drive). Plaintiff and Eisenberg were working toward a potential solution which involved a provision that would require the tenant of 1413 Murray Drive to cover 80% of the floors in all living spaces with rugs and soundproof padding.  However, the negotiations ended, on information and belief because Defendant decided to sell the property.

14.    Defendants acquired the Murray Apartments on or about February 18, 2021.  At the time of the sale, the unit above Plaintiff's unit was vacant.

15.    On February 25, 2021, Plaintiff made her first request for reasonable accommodation to Defendants through a letter sent to Verenice Ramirez.  She wrote in part:

> I am requesting an accommodation for my disability. I suffer from PTSD and anxiety disorder, and my symptoms are exacerbated by noise made on the hardwood floors above my apartment when there are occupants in the upstairs unit at 1413 Murray Drive. The sound transmission from the upstairs floors into my apartment is abnormally loud, and the upstairs living room and kitchen sit directly above my bedroom. The sound of footsteps, furniture moving, and items dropping on those hardwood floors triggers my insomnia, hypervigilance, chronic fatigue, and depression. I am formally requesting **one** of the following accommodations for a quieter apartment:
>
> 1) I request to transfer to the upstairs apartment at 1413 Murray Drive
>
>         Or

2) I request that 1413's hardwood floors be carpeted with soundproof underlayment or padding
Please e-mail me back with your response to my request by March 11, 2021. In the meantime, please let me know if you would like documentation of my disability and need for a quieter apartment.

16.     Defendants did not respond to Plaintiff's request for accommodation, and in early March they began renovating the 1413 Murray Drive unit. After a search of the Los Angeles Building Department's website to find permits for these renovations, none could be found. On information and belief these renovations were done illegally. Due to the construction noise, Plaintiff had to relocate to her aunt's home.

17.     On March 23, 2021, Plaintiff sent another email to Defendants again requesting beginning an interactive process regarding her previous request for reasonable accommodation.  In her email, Plaintiff also noted that since work was being done beneath the floorboards in the 1413 Murray Drive Unit, it would be a good time to implement some soundproofing between the floors and her ceiling to accommodate her disability.

18.     Defendants delayed any substantive discussions of Plaintiff's requests until April 5, 2021.  At that time, Plaintiff discussed the matter with Defendants' representative, Lumi Voinescu. During that conversation, Defendants offered to require the new tenants of 1413 Murray Drive to install rugs and padding in the living room as an alternative accommodation to relocating Plaintiff, installing carpet, or providing soundproofing insulation between the floors during the renovation.  Plaintiff requested that the rug coverage include additional high traffic areas such as the dining area and hallway, and she also requested that the agreement be finalized in writing and included in the lease agreement prior to Defendants listing 1413 Murray Drive for rent. Plaintiff followed up with Defendants regarding

her requests on April 8, 2021, April 15, 2021, April 30, 2021, May 24, 2021, and June 11, 2021.

19.    On June 4, 2021, Defendants listed 1413 Murray Drive for rent on Zillow. The listing stated that the unit had "hardwood floors throughout" but made no mention of the requiring rug coverage on those floors. Further, Plaintiff still had not received any written confirmation from Defendants of the language that would be in the lease regarding rug and soundproof padding requirements. Plaintiff followed up with Defendants regarding this issue.

20.    On June 14, 2021, Defendants' representative, Lumi Voinescu, informed Plaintiff that the new lease for 1413 Murray Drive would include a "good neighbor policy of covering 80% of the floor area of the living room with soft cover, and that landlord will provide memory foam padding to place under such covering."

21.    The new tenants moved into 1413 Murray Drive on June 26, 2021. They did not immediately place the padding and rugs on the floors, so Plaintiff was forced to relocate to her aunt's house due to the noise from the new tenants.

22.    As of August 10, 2021, the rugs and padding had still not been put into place by the upstairs neighbor. Plaintiff requested that Defendants ensure that the "good neighbor policy" of the lease was enforced such that the padding and rugs would be in place by September 10, 2021. On August 17, 2021, Defendants responded that they were still coordinating with the new tenants.

23.    On August 27, 2021, Defendants listed another unit in the Murray Apartments (3317 Hamilton Way) for rent on Zillow. 3317 Hamilton Way is an upper floor unit in the Murray Apartments which was a comparable unit to Plaintiff's, which rented for $202 less per month than Plaintiff's unit, prior to Defendants renovating it before relisting it for rent.  Defendants did not inform Plaintiff of the availability of the unit prior to renovation or listing.

24.    On September 12, 2021, Plaintiff again emailed Defendants regarding the noise levels from 1413 Murray Drive.  She informed Defendants that the noise level in her apartment indicated that a large portion of the living room was not covered with rugs and that the noise was impacting her sleep.  She again requested that they enforce the "good neighbor policy."  Defendants confirmed that the rugs and pads had not been installed as of September 28, 2021.

25.    On October 8, 2021, Plaintiff informed Defendants that although she had been staying elsewhere until the accommodation of the rugs and padding were in place in 1413 Murray Drive, the alternative housing would no longer be available to her as of October 23, 2021. Plaintiff again requested that Defendants' enforce the accommodation that they had previously agreed to.

26.    On October 14, 2021, Defendants confirmed that the rugs and pads were in place in 1413 Murray Drive.  However, on October 28, 2021, Plaintiff informed Defendants that the rugs and padding were not providing sufficient soundproofing because they were not covering the required space.  She notified Defendants that there was not 80% coverage as required by the agreement, and she offered to pay for alterative padding that would provide better soundproofing under the rugs.

27.    On November 12, 2021, Defendants conducted an on-site visit to check the effectiveness of the soundproofing pads and rugs. Defendants' inspector agreed that the rugs were not providing sufficient coverage in Plaintiff's bedroom to deaden the noise, and they agreed to amend the "good neighbor policy" to require additional rug coverage near the kitchen in 1413 Murray Drive.

28.    Defendants did not force implementation of any new rug coverage, and Plaintiff followed up with them regarding the issues on December 20, 2021, January 5, 2022, and January 10, 2022.

29.    On January 10, 2022, Plaintiff learned that another one-bedroom upper floor unit in the Murray Apartments (1411 Murray Drive) was soon to be vacated.

She immediately emailed Defendants and renewed her request to transfer to a comparable upper floor unit, specifically 1411 Murray Drive.  In her email she noted that "**moving into the unit 'as-is' to facilitate a reasonable transfer.** Seeing as their unit at 1411 Murray Drive is a top-floor unit, this should resolve the problem entirely as it would not require the participation of another tenant and the top-floor is free from overhead impact noise, which would be a much better fit for my condition overall."

30.    On January 14, 2022, Defendants' representative informed Plaintiff that the 1413 Murray Drive tenants had represented that no padding or rugs had been removed, but they failed to address Plaintiff's concerns or request for transfer to an upper floor unit.

31.    On January 16, 2022, and January 24, 2022, Plaintiff reiterated her request for reasonable accommodation to be transferred to the vacant upper floor unit.

32.    On January 28, 2022, Defendants' representative, Lumi Voinescu called Plaintiff to discuss her request for transfer to 1411 Murray Drive. Ms. Voinescu told Plaintiff that the vacant unit was 10% larger than Plaintiff's unit. Plaintiff offered to pay a proportionate rent increase if she could move into the unit without Defendants preforming any renovations. Defendants told Plaintiff that her current unit would need to be assessed to determine the market value before a potential transfer could be approved.  Plaintiff agreed to this process.

33.    On February 7, 2022, Defendants gave Plaintiff a tour of 1411 Murray Drive while they evaluated her unit for market value.

34.    Having heard nothing from Defendants, Plaintiff followed up on her request for transfer to the upper unit on February 23, 2022, and March 1, 2022.

35.    On March 18, 2022, Defendants offered Plaintiff a transfer to 1411 Murray Drive at a monthly rent of $4000, despite that the previous tenants had only paid around $1,217 per month in rent.  Plaintiff informed Defendants that the offer

9

was too expensive for her, roughly four times Plaintiff's current rent of $1,065 per month. Defendants then offered to pay Plaintiff to leave her unit. Plaintiff declined any offer to pay her to leave her unit. Defendants then told Plaintiff that they could not offer any other solutions to accommodate her disability, including enforcement of the good neighbor policy.

36. During the Spring and Summer of 2022 Plaintiff spent as much time as she could at her aunt's home due to the noise from 1413 Murray Drive which disrupted her sleep and triggered her PTSD symptoms.

37. During the fall of 2022, Plaintiff returned to her apartment full time to be close to and care for her sick mother. Plaintiff's return coincided with Defendants' renovation of 1411 Murray Drive. Plaintiff made several requests that Defendant comply with local ordinances regarding construction work including not working on Sundays or late at night to accommodate her disability. Defendants failed to substantively respond to any complaints or requests for adherence to construction hour restriction.

38. In late 2022, Plaintiff's aunt moved away from the area, and Plaintiff no longer had the option of seeking a respite from the noise in her apartment or get a full night of sleep elsewhere.

39. During the Fall of 2022 through the summer of 2023, Plaintiff was regularly startled awake between 5:00 am and 5:30 am due to noise emanating from 1413 Murray Drive.

40. On June 2, 2023, Plaintiff spoke directly with the tenant of 1413 Murray Drive regarding the issues she was experiencing with noise in her bedroom coming from his apartment. Plaintiff's neighbor informed her that Defendants never notified him of the rug policy when he moved in. Defendants only brought it to his attention only after Plaintiff had complained about the noise. He further informed Plaintiff that he had replaced the rugs in his unit several times without putting down or being supplied any soundproofing padding.

41.     On June 3, 2023, Plaintiff emailed Defendants to inform them of her conversation and stating in part,

> I connected with [the tenant] upstairs at 1413 Murray yesterday, as the rugs/rugpads have been ineffective at absorbing the impact noise above my bedroom for a while now. It is taking a big toll on my ability to sleep and my health.
>
> He was very kind and shared that they've placed new rugs, but they are still **in need of soundproof rugpads** cut to the new dimensions. Without them, we hear every footstep. Could you please help coordinate the new rugpads and confirm everything is in place according to the 80% agreement within the next two weeks?

42.     On June 7, 2023, Defendants told Plaintiff that they would order new padding for one rug. Plaintiff replied with a request Defendants ensure that all the rugs/pads were in place and in good condition when they dropped off the new one. Defendant did not respond.

43.     On November 5, 2023, Plaintiff informed Defendants that the "good neighbor policy" continued to be ineffective in reducing the noise from 1413 Murray Drive in her apartment. She emailed Defendants the following:

> The area rug/rugpad configuration has remained ineffective since I connected with [the tenant] in June. My husband and I are regularly woken throughout the week by loud, uninterrupted impact noise from walking across the floor above our bedroom, as early as 5am on Tuesdays. I recently lost my mom, which has exacerbated my insomnia and amplified my need for the ability to sleep. While I appreciate that the upstairs tenants may be trying to be quiet during overnight hours, the floors remain highly sensitive and resonant without the agreed upon coverage and padding.
>
> Given that the accommodation was uninstalled and new coverings placed, I'd like to request a walkthrough with you while everyone is home so we can troubleshoot the coverage as we had once before please. Given how long this issue has been going on, I think it would be beneficial to have Lumi on site as well to avoid any blindspots. Provided a few days notice, I can make almost any day work - with the exception of November 18-20 for my mom's memorial services. When

is a good time within the next 2 weeks?

44.    On November 14, 2023, Defendants informed Plaintiff they had ordered another new pad for a rug in 1413 Murray Drive.

45.    On November 21, 2023, Defendants' representative conducted an in-person inspection to assess the effectiveness of the rugs and pads on mitigating the noise in Plaintiff's unit from 1413 Murray Drive. Defendants' representatives confirmed that there were at least two areas of regular foot traffic that were not covered by pad/rugs.  The Parties all agreed that rugs and padding would be installed in both of the uncovered areas of the unit to further dampen the noise intrusion into Plaintiff's unit.  Defendants also informed Plaintiff that the new rug pads were thinner than the previous pads due to complaints from the 1413 Murray Drive tenants but provided no potential solution or mitigation for this issue.

46.    Throughout the end of November and December the tenants of 1413 Murray Drive did not install any further pads or rugs.  Despite Plaintiff following up with Defendant on several occasions and sending an audio recording proving the sound intrusion, Defendants refused to actually enforce the agreed to accommodation.

47.    On January 3, 2024, Plaintiff emailed Defendants again requesting that Defendants enforce the "good neighbor policy" in regard to the areas not currently covered by pads and rugs in 1413 Murray Drive.

> The floor is clearly still in need of coverage and effective padding. We are unable to rest in the bedroom with this severe sound disturbance. We continue to be woken during pre-dawn hours at least 1-2x per week, including yesterday at 5:30am. It has been an incredibly challenging time for us, and the prolonged inability to sleep is impacting my health conditions and, subsequently, every area of our lives.

48.    On February 1, Defendants sent a contractor to Plaintiff's unit to evaluate whether sound proofing Plaintiff's unit's ceiling would be a possible alternative solution to the "good neighbor policy." Defendants' contractor informed

both Plaintiff and Defendants that soundproofing the ceiling of Plaintiff's unit was unlikely to be an effective solution for the noise issue. During that site visit, Defendants' representative also confirmed that the floors of 1413 Murray Drive were still not covered with rugs and padding as previously agreed upon.

49.    On February 21, 2024, Plaintiff again emailed Defendants and requested that they enforce the "good neighbor policy" as they had previously agreed.  She also reiterated that soundproofing the ceiling of her unit was unlikely to work and therefore she was not interested in pursuing that accommodation. Further, Plaintiff informed Defendants that the promised accommodation was not provided she sought an accommodation of being relocated if the upstairs neighbors vacate the unit, or other appropriate accommodation.

50.    On March 1, 2024, Defendants and Plaintiff had a Zoom meeting to discuss Plaintiff's accommodation. Defendants admitted that the "good neighbor policy" was completely unenforceable against the 1413 Murray Drive tenants. They indicated that they were continuing to explore soundproofing the ceiling of Plaintiff's unit as another alternative, despite Plaintiff's objection. Plaintiff reiterated that the current accommodations were ineffective for mitigating the noise which was impacting her disability, and that the ceiling padding had already been shown to be ineffective. Plaintiff reiterated her requested accommodation to be transferred to a top floor unit. Defendants said that they would contact Plaintiff regarding these issues at a later date.

51.    Plaintiff followed up with Defendants regarding compliance with her requested accommodations on March 15, 2024, March 29, 2024, and April 13, 2024.

52.    Defendants finally responded on April 17, 2024, stating that the tenant of 1413 Murray Drive had "agreed to restore the area between the front door and the kitchen to the level of coverage from the initial period of his tenancy in 2021…" Plaintiff asked Defendants to confirm that the padding under the rugs would be the

13

original padding that had been agreed upon, and Defendants confirmed that they would "provide new padding for the new rugs. All the existing rugs he has now have padding as well."

53.    On May 7, 2024, Defendants informed Plaintiff that the rugs and padding had been reinstalled in 1413 Murray Drive.

54.    On May 15, 2024, Plaintiff notified Defendants that the rugs and padding as installed were not enough to mitigate the noise intrusion from 1413 Murray Drive into her unit.  She noted that this was particularly true since the tenants had a large rambunctious dog.  Plaintiff sent a video recording of the noise intrusion in her unit. She also requested that Defendants provide her with documentation regarding specs of the padding they purchased.

55.    Instead of providing the requested documentation, on May 29, 2024, Defendants requested that Plaintiff provide them with recordings of the noise intrusion she was still experiencing. Plaintiff responded that she would do her best to capture the noise but that is difficult for her to do when her hypervigilance is triggered after being awoken in the middle of night.  Additionally, Plaintiff wrote:

> As a reminder, I requested accommodation for a quieter apartment because the floor noise impacts my condition regardless of the hour, especially as the insomnia often necessitates my sleeping past 8am or catching up on sleep during the day. You and Lumi are welcome to come listen to the impact noise created by the dog running, jumping, and playing above the bedroom. This will give you a better idea of the sound intrusion than a recording. The iphone never picks up the intensity of the low-end noise. Please let me know when you would like to come.

56.    On May 30, Plaintiff did send Defendants a video of the noise intrusion in her apartment as requested.  She also repeated her request that Defendants provide her with the specs for the padding they had provided to the

1413 Murray Drive tenants. Defendants did not respond, so Plaintiff reiterated this request for documentation on June 6, 2024, June 13, 2024, and June 20, 2024.

57. Defendants finally provided Plaintiff with the receipts for the padding, but they did not show the purchase of sufficient padding to provide the 80% coverage as agreed to by Defendants on April 17, 2024. The documentation also showed that at least some of the rug pads provided to the tenant of 1411 Murray Drive were thinner than the pads originally agreed to.

58. In August of 2024, Plaintiff learned that the tenant occupying one of the top units at the Murray Apartments, 1411 Murray Drive, was moving out.

59. On August 28, 2024, Mental Health Advocacy Services, Inc. (MHAS) sent Defendants a demand letter on behalf of Plaintiff which requested that Defendants grant Plaintiff a reasonable accommodation of her disability to "either transfer into the upper unit at 1411 Murray Drive when it is vacated or the option to transfer into another comparable top floor unit – whichever is available sooner. We also request that Ms. Stavitsky be allowed to transfer at her current rent, or at a proportional rate to the size of the new unit."

60. On August 29, 2024, Defendants listed 1411 Murray Drive for rent on Zillow.

61. On September 5, 2024, 12:30 pm, Defendants emailed Plaintiff directly and informed her that the monthly rent for 1411 Murray Drive is $4,600 a month, and asked that Plaintiff inform them know before 5 pm on that same day whether she was interested.  MHAS responded to Defendants' offer at 4:48 PM on September 5, 2024, to request more information and an opportunity to negotiate the terms of a potential transfer to 1411 Murray Drive accommodate Plaintiff's disability without an increase in her current rent. Defendants did not respond or engage in the interactive process regarding the requested transfer to an upper level unit at the Murray Apartments.

62.     On September 9, 2024, MHAS received a letter (dated September 3, 2024) from Defendants' counsel responding to Plaintiff's request for reasonable accommodation. Defendants letter alleged that "the documentation provided is insufficient to establish a connection between the disability and the requested accommodation." Then, for the first time in over three and a half years of dialog, Defendants requested that Plaintiff provide a verification or letter from her doctor supporting her requested accommodation by September 30, 2024.

63.     On September 30, 2024, MHAS emailed Defendants' counsel in response to their letter refuting the Defendants' denial of Plaintiff's requested accommodation. MHAS also enclosed a medical professional's verification of Plaintiff's disability which included a description of the nexus between the request for transfer to an upper floor unit and Plaintiff's disability.[1] Finally, MHAS reiterated Plaintiff's request to transfer to 1411 Murray Drive at her current rent as a reasonable accommodation of Plaintiff's disability.

64.     On October 18, 2024, Defendants' attorney responded to the second MHAS letter.  In that letter, Defendants deliberately misconstrued and cherry-picked language in Plaintiff's health care provider's letter of support to portrait Plaintiff as actually needing a reasonable *modification* to allow Plaintiff to pay to soundproof her current unit, which Plaintiff already expressly rejected as ineffective, rather than a transfer to another quieter, upper floor unit.  Further, Defendant also claimed that Plaintiff had rejected transfer to the previous units offered to her at market price.  However, the communications above clearly show that Plaintiff never rejected the offer of any vacant unit but instead requested that Defendants negotiate with her on the monthly rent as part of the interactive process under the FHA, which Defendants refused to do as required by law.

_____

[1] Plaintiff has already offered to provide this documentation to Defendants in her original request of accommodation in February of 2021.  However, Defendants did not request anything form her until October of 2024.

65.    On November 14, 2024, upon learning that unit 1413 Murray Drive was vacant, Plaintiff requested that she and Defendants participate in a mediation through the California Civil Rights Department to discuss potential terms of a transfer.  Defendants refused to participate.

66.    On November 19, 2024, MHAS submitted a further request for accommodation to Defendants on behalf of Plaintiff.  In this request, MHAS laid out all the facts, supported the request with law, and requested the following reasonable accommodation:

> Ms. Stavitsky requests again that she be allowed to transfer to 1411 Murray Drive, 1413 Murray Drive (which has recently also been vacated), or another upper-floor unit, at a reasonable rent as an accommodation for her disability. Should 1411 Murray Drive have already been rented out in the time since Ms. Stavitsky made her August 28, 2024 request, we will consider renting out the unit as an unlawful denial of her request. Similarly, renting out 1413 Murray Drive would constitute a separate unlawful denial.

67.    On November 19, 2024, Defendants informed Plaintiff that unit 1413 Murray Drive had become vacant.  They asked her to let them know if she was interested in leasing that unit for a rent of $3,600 three times her current rent of $1,111.  Plaintiff responded on November 20, 2024, asking that Defendants to confirm whether her "reasonable accommodation request to transfer to 1413 Murray at [her] current rent or proportionate amount can be granted?"

68.    On November 25, 2024, Defendants responded that Plaintiff's request was unreasonable.  Brad Weinstock wrote:

> it is unreasonable to request a unit transfer that is not comparable to your unit. As you know, your unit is a one-bedroom /one-bathroom unit. The entire building is only seven units. The unit you are requesting at your current rent is a two-bedroom/two-bath unit. It is an undue financial burden and hardship to give you the two-bedroom /two bath at your current rent. The upper units have been offered to you, at their current rents. You have refused them.

1

2

3

4

5

> Next, and as part of the interactive process, we offered that you can add soundproofing to your ceiling, as a reasonable modification since you were not satisfied with the padding in the unit above yours. This has already been communicated to your attorney by our attorney. It is not clear if you have entertained this as an option, or refused it.

6

7

> We submit we have honored the fair housing guarantees and in good faith are engaging in the interactive process. But again, we submit that your request is unreasonable.

8

9

10

69.     On November 26, 2024, Plaintiff responded to Defendants by continuing to request the reasonable accommodation of transferring to an upper floor unit at the Murray Apartments:

11

12

13

14

15

> I am still in need of an accommodation that effectively meets the needs of my disability. 1413 Murray is a two-bedroom/one-bath unit, similar in size to my current unit. Raising the rent on my current unit to market rate would offset any financial burden. As outlined in my counsel's November 19 email correspondence (copied below), we maintain that my ongoing request to transfer at a comparable or proportionate rent is both reasonable and legally supported.

16

17

18

19

> Given the lack of effective remedies over nearly four years, I hope we can now work together to resolve this matter promptly and in good faith, as required by fair housing laws. Please reference the attached letter. I look forward to your response.

20

21

22

23

24

25

26

27

70.     On November 26, 2024, Defendants' counsel also wrote Plaintiff to inform her that Defendants denied her request to transfer to an upper unit because it "constitutes an undue financial and administrative burden." Defense counsel also reiterated that soundproofing the ceiling at Plaintiff's expense would be her best option, without providing any evidence that sound proofing her ceiling would provide any noise reduction in her unit. Such assertions contradicted Defendant's own contractor's evaluations of the effectiveness of this measure because the work needed to be done in the above unit to be effective, not in Plaintiff's unit.

28

71.     On March 24, 2025, MHAS made one final effort to convince Defendants to agree to grant Plaintiff her requested accommodation of allowing Plaintiff to transfer to an upper-floor unit at the Murray Apartments at her current rent without the filing of a lawsuit. The MHAS letter provided significant analysis refuting Defendants' claims that granting Plaintiff's requested accommodation is an undue financial or administrative burden.  However, Defendants continue to refuse to grant Plaintiff's reasonable accommodation request, and they refuse to engage in the interactive process regarding the potential of the transfer at *anything* lower than market rate rent despite that Plaintiff's currently resides in a rent-controlled apartments and has lived in the building since 2011.

72.     The noise intrusion from her upstairs neighbors has taken a significant toll on Plaintiff.  The lack of sleep is very detrimental to both her mental and physical health. Plaintiff needs the requested reasonable accommodation of a transfer to an upper-floor unit in her building to have an equal opportunity to use and enjoy her dwelling.

73.     As a result, Plaintiff has been forced to file this lawsuit to enforce her right to fair and equal access under the Federal Fair Housing Act and California law.

74.     Plaintiff contends that all of her interactions with Defendants are within the requisite statute of limitations due to the continuing violation doctrine which aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192, 292 P.3d 871, 875 (2013).  This is squarely what happened here, where Plaintiff made a request for reasonable accommodation repeatedly, starting four years ago, but who's suffering only culminates in its totality on the last day she is not granted her accommodation.  In other words, her suffering was ongoing and worsening from the time she initially made the request, and the totality

of that cause of action cannot be captured but for inclusion of all the years of that suffering that were caused by Defendants and could not have been stopped sooner.

75. Further, the continuous accrual exception to the statute of limitations also applies. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192, 292 P.3d 871, 875–76 (2013). Here, the same request for accommodation is being made and denied again and again whether by sophistry or inaction such that even if damages in other respects such as rent that should have been mitigated for its lack of equal use due to disability might be waived, the accommodation requests and the damages flowing from that do not. Similarly, the fact that even past reasonable accommodation requests may not have been acted on within the first 2-year period does not prevent revival of the claim by subsequent requests. *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 821, 23 P.3d 601, 609 (2001), *as modified* (July 18, 2001).

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE FEDERAL FAIR HOUSING ACT
### (42 U.S.C. § 3601 *et seq.*)

76. Plaintiff repleads and incorporates by reference, as if fully set forth again below, the factual allegations contained in Paragraphs 1 through __, above, and incorporates them here by reference as if separately repleaded hereafter.

77. The Murray Apartments is a "dwelling" available "to rent" within the meaning of the Fair Housing Act (FHA). 42 U.S.C.A. § 3602. It is a "covered multi family dwelling" under section 3604 (f)(7)(A).

78. Based on the above, Defendants have violated the protections afforded to Plaintiff under the FHA, including, but not limited to, the following:

a. Failing and refusing to make reasonable accommodations in policies, programs, and procedures when such is necessary to

20

afford Plaintiff an equal opportunity to use and enjoy the dwelling.

79.    Defendants had actual knowledge that Plaintiff is a person with a disability.  Plaintiff affirmatively requested several accommodations including that she be allowed to move to upper unit of similar size to her ground-floor unit and requesting Defendants to provide sound mitigation between her unit and the unit above her.  Defendants repeatedly refused or failed to adequately respond to Plaintiff's requests for accommodations.

80.    Defendants maintain a pattern and practice of denying Plaintiff full and equal access to her dwelling by their failure to respond appropriately to requests for accommodation.  42 U.S.C.A. § 3604(f)(3).

81.    For these reasons, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as stated below.

## SECOND CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT
### (*Cal. Government Code § 12955 et seq.*)

82.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 81 of this Complaint and incorporates them here as if separately re-pleaded.

83.    The Fair Employment and Housing Act (FEHA) prohibits discrimination on the basis of disability in housing.  Gov.C. § 12955 *et seq*.

84.    The Murray Apartments is a "housing accommodation" within the meaning of FEHA. Cal. Gov't Code § 12927.

85.    Based on the above, Defendants have violated the protections of FEHA as follows:

a.    Failure to modify policies and practices to provide reasonable

21

accommodations to Plaintiff, including changes in policies, programs and procedures that allow persons with disabilities to enjoy their rental dwelling to the same extent as those without disabilities.

86.     Based on the above, Plaintiff is entitled to actual damages, punitive and exemplary damages and injunctive relief as set forth below.

WHEREFORE, Plaintiff prays for damages and injunctive relief as stated below.

## THIRD CAUSE OF ACTION:
## VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT
### (Cal. Civ. Code § 54 *et seq*

87.     Plaintiff repleads and incorporates by reference, as if fully set forth again below, the allegations contained in Paragraphs 1 through 82 of this Complaint and incorporates them here as if separately re-pleaded.

88.     The Disabled Persons Act (DPA) requires, "Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons."  Civ.C. § 54.1(b)(1).

89.     The subject apartment building is a housing accommodation under Civil Code section 54.1(b)(2).  Plaintiff is a person with a disability within the meaning of the DPA.

90.     For these reasons, Defendants have violated the DPA as follows:

a.     Denying Plaintiff full and equal access to her housing accommodations, (Civ.C. § 54.1(b)(1)); and

b.     Refusing to "make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal

22

opportunity to use and enjoy the premises." (Civ.C. § 54.1(b)(3)(B))

91.    Plaintiff has suffered actual damage because of such failures which she alleges stems from Defendants' knowing and intentional violation of her rights as a disabled person under California Law.

92.    Based on the above, Plaintiff is entitled to statutory damages, actual damages, punitive and exemplary damages as set forth below.

WHEREFORE, Plaintiff request relief as outlined below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHT ACT**
**(Cal. Civ. Code § 51 _et seq._)**

93.    Plaintiff repleads and incorporate by reference, as if fully set forth again below, the allegations contained in Paragraphs 1 through 92 of this Complaint and incorporates them here as if separately re-pleaded.

94.    At all times mentioned, the Unruh Civil Rights Act, California Civil Code 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

95.    The building is a business establishment and Plaintiff is a person with a disability within the meaning of the Unruh Act.

96.    Defendants violated the Unruh Act by its acts and omissions, including, but not limited to, the following:

      a.    Failure and refusal to modify the policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages, facilities, privileges, or services.

97.    Plaintiff is informed, believes and alleges that Defendants' behavior, as alleged here, was intentional: Defendants were aware or were made aware of

23

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

their duties to refrain from establishing discriminatory policies and barriers preventing physically disabled persons from accessing its facilities, before this Complaint was filed.

98.    Defendants' refusal to provide Plaintiff's the requested accommodations demonstrates a knowing and conscious disregard for the law in general and an intentional denial of rights of disabled tenants in particular. Such conduct justifies an award of treble, punitive and exemplary damages along with all other relief sought.

WHEREFORE, Plaintiff requests relief as outlined below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as alleged in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendants as alleged here, unless Plaintiff is granted the relief she requests. Plaintiff and Defendants have an actual controversy and opposing legal positions on Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff JENNIFER STAVITSKY and prays for judgment and the following specific relief against Defendants:

1.    An order enjoining Defendants, their agents, officials, employees, and all persons acting in concert with them:

    a.    From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.    To provide a policy and procedure consistent with California and federal law to provide reasonable accommodations for persons with disabilities who live at the building or who wish to do so;

24

c.   To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons;

d.   To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities;

e.   Provide a mutually agreeable top floor unit at the same or proportional rental rate to her current rental rate;

f.   As an item of damages, pay the cost of Plaintiff's moving expenses and a moving company of her choosing to move her belonging once a top floor unit is mutually agreed upon.

2.   Retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of physically inaccessible public facilities and policies as complained of here no longer occur, and cannot recur;

3.   Award to Plaintiffs all appropriate damages, including, but not limited to, statutory damages, general damages, and treble damages in amounts within the jurisdiction of the Court, all according to proof;

4.   Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

5.   Award prejudgment interest under Civil Code section 3291; and

6.   Grant any other relief that this Court may deem just and proper.

Date: June 2, 2025                              CLEFTON DISABILITY LAW

                                                   _/s/ Aaron Clefton_
                                                By AARON CLEFTON, Esq.
                                                Attorney for Plaintiff
                                                JENNIFER STAVITSKY

//

//

25

## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.

Date: June 2, 2025                                CLEFTON DISABILITY LAW

                                                 ___ */s/ Aaron Clefton*
                                                 By AARON CLEFTON, Esq.
                                                 Attorney for Plaintiff
                                                 JENNIFER STAVITSKY

26